(Superior Court of Cincinnati.)
General Term.

HAUSER, KRAMER & COMPANY, a firm, etc., plaintiffs in error, v. CURRAN & WOLFF, et al., defendants in error.

*Implied warranty of fitness of machine sold for known purpose—*

A warranty that a certain machine would do a particular thing, where in itself collateral to the sale which would be complete without it, would be part of the description and essential to the identity of the thing sold; and to admit parol proof of such an engagement would be to add another term to the written contract, contrary to the settled and salutary rule upon that subject.

The fact alone, that a known, described and definite aricle is ordered of a manufacturer for a known purpose, does not create an implied warranty of fitness, because that act alone is not sufficient to overthrow a presumption that the buyer relied on his own judgment. But a warranty of fitness in the sale of a

specific chattel may be implied where it appears from all the circumstances surrounding the transaction that it was understood between the parties that the buyer should rely upon the judgment of the seller, and not upon his own judgment, that the article purchased would accomplish a purpose made known to the seller. The fundamental inquiry must always be, whether, under the circumstances of the particular case, the buyer had the right to rely, and necessarily relied on the judgment of the seller, and not upon his own.

Where an article, not then in existence, is ordered of a manufacturer and is intended for a particular purpose, which purpose may be shown by parol, the contract being executory in its character, the law of caveat emptor does not apply, but the law implies a warranty that the article will answer that purpose; and this, although the thing to be made is one of a specific kind, but is not in esse at the time; for the purchaser can exercise no judgment in regard to the quality of a thing not in esse, or which is indeterminate and to be therefore selected or procured by the exercise of the vendor's sole judgment, discretion and will.

JACKSON, J.

The facts of this case are substantially as follows: Hauser, Kramer & Co. were a firm of coopers, doing business in Cincinnati, on and prior to the 17th of June, 1886. Their business was the manufacture and sale of beer kegs, vats, etc., and in the conduct of their business, they desired to purchase a kiln or dryer with which to dry the wood to be used by them in making such kegs and vats, without subjecting the same to the slow process of drying by the sun.

Curran & Wolff were a firm in Chicago, engaged in the business of manufacturing kilns or dry houses to be used for the purposes which Hauser & Kramer desired.

It seems that Hauser & Kramer were contemplating the purchase of a certain kiln known as the Speer kiln, and that they were visited by one J. S. Bates, the duly authorized agent of Curran & Wolff, who stated that the kiln which he represented would do the work more effectually than the Speer kiln. Plaintiffs in error stated to Bates that their wood was of a peculiar quality, and that they would not purchase the kiln which he represented without an express guaranty that it would successfully dry said wood.

Bates visited the cooperage establishment of Hauser & Kramer on several occasions and inspected their lumber and repeatedly assured them that the Curran & Wolff kiln was well adapted to dry the lumber which they used, and that it would do their work more effectually than the Speer kiln. He repeatedly stated that he would guarantee that the kiln would give satisfaction.

It also appears that Bates offered to give plaintiffs in error letters of introduction, so that they could have the opportunity of inspecting for themselves other kilns of the kind. But this offer was refused, and it was impliedly understood between them, that Hauser & Kramer were not expected to and in fact should not rely upon their judgment in the selection of a kiln, but that they could and were to rely upon the judgment of the seller that the kiln in question would dry their lumber satisfactorily. The evidence, which is too lengthy to quote, shows that Hauser & Kramer were, impliedly at least, released from the obligation of inspecting said kiln or examining the principle upon which it was to be constructed and operated, and in fact from exercising any judgment of their own in its selection.

Thereupon the following written contract was entered into between the parties.

"This agreement made the 17th day of June, A. D. 1886, by and between Curran & Wolff, of the city of Chicago and state of Illinois, the sole and exclusive owners of the following patents, granted by the United States to Hannah & Osgood, the 27th day of November, 1866, and numbered 59,998; to Jas. H. Osgood, Jr., November 27, 1866, No. 60,048; to J. W Hannah, November 27, 1866, No. 59,998; to Johnson & Sumner, July 7, 1867, No. 79,661; to Sumner & Johnson, July 7, 1868, No. 79,661; to E. J. Sumner, March 26, 1872, No. 125,098, to E. J. Sumner, May 21, 1878, No. 8,240; to M. C. Curran, December 17, 1878, No. 210,999; to Charles Wilcox, May 6, 1879, No. 215,193; to J. J. Curran, re-issue, August 12, 1879, Nos. 8,840 and 8,846; to J. J. Curran, March 20, 1883, No. 274,282; for the term of which said letters patent were issued for certain improvements in lumber dryers, of the first part, and Hauser, Kramer & Co., of Cincinnati, in the county of Hamilton, and state of Ohio, of the second part. Witnesseth: That the said parties of the first part have agreed and by these presents do agree, to sell, grant and convey unto the said party of the second part, the right to construct and use one kiln or dryhouse, size 22 by 50 feet, each under the patents as aforesaid, for and within the county of Hamilton, state of Ohio, and to furnish the heating apparatus for the same, according to the specifications on the back hereof, free on board of cars at Chicago, and set up the same at the place of construction. The parties of the second part agree to have the building ready to receive said heating apparatus within thirty days from this date, and pay the freight of the said heating apparatus from Chicago to the place of construction.

It is agreed that the said party of the second part has a right to move the kiln to any part of Ohio after giving notice to the party of the first part.

And the said party of the second part covenants and agrees to pay unto the said parties of the first part for the same the

sum of twelve hundred dollars ($1200.00) lawful money of the United States, to be paid as follows, to-wit: Three hundred dollars ($300.00) to be paid cash on the receipt of the iron materials at Cincinnati, Ohio, and the remaining nine hundred dollars ($900.00) to be paid by two notes as follows: A ninety days note for three hundred dollars ($300.00) to be given and dated on receipt of iron materials and bear six (6) per cent. interest per annum until paid, and a four months note for six hundred dollars ($600.00) to be given and dated on completion and acceptance of kiln, and bear six (6) per cent. interest per annum until paid.

And it is further agreed that the title in the kiln is to remain in the vendors till all payments are made as per contract herein stated.

In witness whereof, the parties of these presents have set their hands and seals the day and year first above written.

Signed, sealed and delivered in presence of Albert J. Hauser, Curran & Wolff, James S. Bates, Hauser, Kramer & Co.

It is admitted that after the kiln was put in under this contract it failed to work successfully; that a second test made after Hauser and Kramer had put in a steam box, at th suggestion of Curran & Wolff, and still it failed to dry the wood. Hauser & Kramer paid $300.00 upon the delivery of the material, and also gave a note for $300.00 which they paid. About $800.00 worth of material was practically destroyed in making the tests as to the sufficiency of the kiln. Hauser & Kramer thereupon attempted to rescind the contract and demanded of Curran & Wolff a return of the $600.00 and also damages for the destruction of its lumber used in making the tests. Suit was accordingly brought by Curran & Wolff, May 30, 1887, seeking to recover the balance on the contract price of the kiln.

Defendants, Hauser & Kramer, by answer and cross-petition, admit the execution of the contract but deny its fulfillment, and seek to recover back from Curran & Wolff the amount paid on the kiln, namely, $6000.00, and also damages in the sum of $800.00 on account of the destruction of its lumber as aforesaid.

The case was tried before Judge Taft at special term, a jury being waived, and resulted in a judgment in favor of Curran & Wolff. The case was brought to this court, and the judgment rendered by Judge Taft below was reversed.

The opinion of Judge Moore in this case will be found reported in 25 Law Bull., 52.

The general term not only reversed the judgment of Judge Taft, but proceeded to render judgment in favor of Hauser & Kramer, on their cross-petition. It is conceded that the general term had no power to render such judgment in favor of Hauser & Kramer, but that the whole case should have been remanded with directions for a new trial. The case went to the Supreme Court, and that court, March, 1894, by a mandate to the Superior Court, ordered and adjudged that "the judgment of the Superior Court in General Term, rendered in favor of the defendants below, Hauser & Kramer, on their answer and cross-petition, be and the same is hereby reversed. And further ordered and adjudged that "the judgment of said court in general term, reversing the judgment rendered in said court at special term in favor of plaintiffs below, the said J. J. Curran and others, be, and the same is hereby affirmed, and the case is remanded to said court in special term for a new trial."

The Supreme Court further ordered in this mandate that the plaintiffs in error recover from defendants, Hauser & Kramer, their costs in the Supreme Court and in the Superior Court. Thereafter, on March 20, 1894, this mandate was amended by ordering that "the costs in this court and in the Superior Court in General Term to be taxed, be divided equally between the parties."

The case came back for trial and was heard before Judge Smith, a jury being waived, and this trial again resulted in a judgment in favor of Curran & Wolff.

The case was tried before Judge Smith upon the same evidence as appeared in the trial before Judge Taft. The case is here upon bill of exceptions embodying all of the evidence, and five questions are presented for the consideration of this court.

First:—Can plaintiffs in error prove by parol an express warranty that the kiln called for in the written contract would dry their lumber satisfactorily?

Second:—Under all the circumstances of this particular case, is there an implied warranty that the kiln would answer the purpose for which it was purchased, which purpose was known to defendants in error, at, and prior to the sale?

Third:—What effect are we to give to the mandate of the Supreme Court?

Fourth:—Do the facts give plaintiffs in error a right to rescind the contract on the ground of fraud?

Fifth:—Is plaintiff in error entitled to a reformation of his contract in equity so as to conform to what it is alleged was the real agreement between the parties prior to the execution of the written contract of sale?

The first question must be answered in the negative. The case of Chapin v. Dobson, (78 N. Y., 74) is authority for the proposition that a contract of warranty is collateral and independent of a written contract of sale, and that parol evidence may be admitted to prove such warranty without violating the rule prohibiting parol evidence to vary or contradict the terms of a written instrument. But the U. S. Supreme Court held otherwise in the case of Seitz v. Brewers' Refrigerator Co. (141 U. S., 510.) In this case Mr. Chief Justice Fuller says: (p. 517.)

"A warranty or guaranty that the machine would reduce the temperature of the brewery to 40 deg. fahr. while in itself col-

lateral to the sale, which would be complete without it, would be part of the description and essential to the identity of the thing sold; and to admit proof of such an engagement by parol would be to add another term to the written contract, contrary to the settled and salutary rule upon that subject."

The reason for the exclusion of such evidence as stated in this case. and also in the case of Olivant v. Bayley, (5 Q. B., 288); and Chanter v. Hopkins, (4 M. & W., 399), seems to be that such an express warranty in the case of a known, defined and ascertained article would be a part of the description of the article itself, and that to admit such evidence would call for the sale of an article other than that specified in the contract. We find no case decided by the Supreme Court of this state bearing directly on the subject, and we therefore follow the rule laid down in Seitz v. Brewers' Refrigerator Co. (141 U. S.) as being the soundest upon principle.

As to the second proposition it is difficult, if not impossible, to reconcile the authorities as to when an implied warranty arises in a sale of personal property.

Defendants in error rely upon the rule announced in the case of Seitz v. Brewers' Refrigerator Co. (141 U. S.) as follows:

"Where a known, described and definite article is ordered of a manufacturer, although stated by the purchaser to be required for a particular purpose, still if the known, described and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer," and insist that the facts bring the case at bar within this rule.

Our construction of the case of Seitz. Brewers' Company, is, that it does not hold the buyer is, under any and all circumstances, conclusively presumed to rely upon his own judgment in purchasing a "known and ascertained article."

It does not hold that there can be no implied warranty of fitness in the sale of a specific chattel, although it should appear from all the circumstances surrounding the transaction that it was understood between the parties that the buyer should rely upon the judgment of the seller and not upon his own judgment, that the article purchased would accomplish a purpose made known to the seller.

On page 518 of this case, Mr. Chief Justice Fuller says:

"The rule invoked is, that where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment of the manufacturer, the law implies a promise or undertaking on his part that the article so manufactured and sold by him for a specific purpose, and to be used in a particular way, is reasonably fit and proper for the purpose for which he professes to make it."

Again, on page 519, he says:

"This is not the case of an alleged defect in the process of manufacture known to the vendor but not to the purchaser, nor of presumptive or justifiable reliance by the buyer on the judgment of the vendor rather than his own, but of a purchase of a specific article manufactured for a "particular use, and fit, proper and efficacious for that use, but in respect to the operation of which, in producing a desired result under particular circumstances, the buyer found himself disappointed."

In the Seitz case the only circumstance to show that the buyer relied upon the seller's judgment was, that the dealer in the article knew the particular purpose for which the refrigerator was to be used, and that he made a verbal guaranty, which verbal guaranty could not, however, be considered for the purpose of proving an express warranty. The court in this case seemed to base its conclusion somewhat upon the fact that, looking at all of the evidence in that case, they could not say that the buyer had not relied upon his own judgment, for it says, (p. 519) that the representations as to whether the machine would cool the brewery so that the buyer could dispense with the use of ice were: "No more than expressions of opinion, honestly entertained, and dependent upon other elements than the machine itself, concerning which plaintiff in error could form an opinion as well as defendant."

The court also lays stress upon the fact that the buyer, after the contract was executed, demanded a written guaranty that the machine would cool his building to 40 deg. fahr. But this was refused, and thereafter the buyer ordered the company to go ahead with the work, thereby in effect electing to rely upon his own judgment, and not upon the judgment of the seller.

We think, then, that the decision of the Supreme Court in the Seitz case simply means that under the particular circumstances of that case, looking at all of the evidence, the fact alone, that a known, described and definite article is ordered of a manufacturer for a known purpose, does not create an implied warranty of fitness, because that fact alone is not sufficient to overthrow a presumption that the buyer relied on his own judgment.

We do not, therefore, think that this case is inconsistent with the case of Kellogg Bridge Co. v. Hamilton, (110 U. S., 108.) And it is deserving of notice that the Kellogg Bridge case is not overruled in the Seitz case. This case holds, in effect, that where a known, described and ascertained article is sold for a particular purpose, which particular purpose may be shown by parol, the seller, knowing the purpose of the sale, and the surrounding circumstances showing that the buyer relied upon the seller's judgment, an implied warranty is created. In this case the Bridge Company which had undertaken to construct a bridge, entered into a contract with a sub-contractor by which the sub-contractor agreed to complete the work of constructing

the bridge, the Bridge Company selling to the sub-contractor the materials furnished up to the time of executing this contract, including piling and piles, lumber and other materials, and labor done on the same." The contract does not show upon its face that the piling, piles timber and other material constituted the "false work" upon which the sub contractor was to work in constructing the bridge; nor does the contract show upon its face that the piling, piles, timber and other materials were to be used by the sub contractor for any particular purpose. On the contrary, it appears to be merely the executed sale of the materials aforesaid, and certainly such materials must be regarded as known, defined and ascertained articles, so that, looking to the contract alone, it would have to follow as a presumption of law that the buyer relied upon his own judgment in making the purchase. But the evidence in the case established the fact that these materials constituted the "false work" upon which the sub-contractor was to work in constructing the bridge, and that it was intended that the false work was to be used by the sub-contractor for this purpose. The evidence also showed that under the circumstances of that particular case, all of which circumstances appeared by parol, that the buyer must necessarily have relied upon the judgment of the seller that the false work would be sufficient for the purpose for which it was intended. As the buyer had no opportunity to inspect, it was held that there was an implied warranty of fitness, because it must be assumed under such circumstances that the seller's judgment was relied upon. But a resort to parol evidence showing all the facts and circumstances of the case, was necessary to show whose judgment was relied upon for the purpose of creating this implied warranty.

On page 116, the court says:

"According to the principles of decided cases upon clear grounds of justice, the fundamental inquiry must always be whether, under the circumstances of the particular case, the buyer had the right to rely, and necessarily relied on the judgment of the seller and not upon his own."

Again, on the same page, the court says:

"When the seller is the maker or manufacturer of the thing sold, the fair presumption is, that he understood the principle of its manufacture and was cognizant of any latent defect caused by such principles and against which reasonable diligence might have guarded. * * *. If the buyer relied, and under the circumstances had reason to rely on the judgment of the seller who was the manufacturer or maker of the article, the law implies a warranty that it is reasonably fit for the use for which it was designed, the seller at the time being informed of the purpose, to devote it to that use."

In this case, (page 117), it was urged that there could be no implied warranty because the contractor was not bound to use the false

work put up by the company, and that if he did so use it he did so at his own risk; and the court met this objection by saying:

"This is only one mode of saying that, in the absence of an express warranty or fraud upon the part of the company, the law will not, under any circumstances, imply a warranty as to the quality or efficiency of this false work."

In conclusion the court say:

"The buyer did not, because in the nature of things he could not, rely on his own judgment; and, in view of the circumstances of the case and the relations of the parties, he must be deemed to have relied on the judgment of the company which alone, of the parties to the contract, had or could have knowledge of the manner in which the work could have been done. The law therefore implies a warranty that this false work was reasonably suitable for such use as was contemplated by both parties."

So in the case at bar we may therefore ask: If the criterion be whose judgment was relied on, and if circumstances may be shown by parol to establish this fact, why may not an express or implied parol agreement or understanding be shown for the same purpose?

We cannot better express our views on this branch of the case than by adopting the following language of Judge Moore in deciding this case in General Term, namely:

"But when the manufacturer's agent sold it to the plaintiffs in error, he stepped beyond his position as vendor of a known and ascertained article, liable only for defects in material and workmanship, and undertook to supply the principle and mode of construction of a dryer which would accomplish the work which the buyer said he wanted."

The Kellogg Bridge case was afterwards affirmed, and the distinction between it and the Seitz case practically drawn in the case of Pullman Palace Car Company v. Metropolitan Street Railway Company (157 U. S., 94.) In this case the Pullman Palace Car Company agreed to build for the Street Railway Company, twenty-five cable cars according to certain written specifications. The cars were to be inspected and accepted by the buyer at the Pullman Works. After a part of the cars constructed under that contract had been delivered, the railway company complained that the brakes upon said cars did not work properly, and sought to rescind the contract on this ground. It was urged that under the circumstances, the Pullman Car Company being a manufacturer, there was an implied warranty as to fitness, and upon this branch of the question the court re-affirms and adopts the rule laid down in the case of Kellogg v. Hamilton, (110 U. S.) But it appearing that the cars themselves were entirely satisfactory, and that the only defect complained of was, that the brakes did not work properly, the court held that for this reason alone, the railway company had no right to rescind the contract.

It is worthy of notice, that notwithstanding the contract provided for an inspection by the street railway company of the cars to be manufactured by the Pullman Company, the court did not say that there could not be an implied warranty under such circumstances, but decided the case on the ground that the breach of implied warranty under the circumstances, did not give a right to rescind the contract.

In discussing the question of implied warranty, Judge Taft in his opinion on the first trial of this case, says:

"In the first place, it is well to understand what evidence is competent to assist us in answering this question. The fact that the agent repeatedly said that he would warrant the fitness of the machine must of course be excluded, since it was not put into writing. If it were competent it would prove an express warranty, not an implied one. Only those facts are competent which are generally competent in construing any written contract, that is, the surrounding circumstances; and of these may be mentioned the fact that plaintiff knew the particular use for which defendant bought the kiln; except to show this knowlege by plaintiffs, the conversation between plaintiffs' agent and members of the defendant firm are wholly irrelevant and incompetent."

In considering the question as to whether the buyer relied solely. upon the seller's judgment for the purpose of raising an implied warranty, we can see no objection to considering the fact that the agent repeatedly said that he would warrant the fitness of the machine. Such a representation on the part of the agent when standing alone would undoubtedly prove an express warranty, and under the rule as heretofore laid down, it could not be admitted for that purpose. But bearing in mind the purpose of the admission of such evidence, namely, that it is not to be considered as tending to prove an express warranty, we can see no objection to its being considered as one circumstance going to show whose judgment was relied on, for the purpose of deciding whether or not there was an implied warranty under all the circumstances of the case.

But if it be admitted that we cannot consider the fact that the agent repeatedly said that he would warrant the fitness of the machine, still we think that the evidence shows that there were abundant circumstances justifying the conclusion that the buyer did rely upon the judgment of the seller. The fact that was it impliedly understood that the buyer should not inspect a machine of a similar character, but that he could rely upon the judgment of the seller, and the fact that the seller sought out the buyer and inspected the kinds of lumber which the buyer wished to be dried, are, we think, sufficient to show that the buyer relied upon the seller to select for him a particular machine, which, in the seller's judgment, would accomplish the particular work which he desired.

In the other case particula.ly relied upon, namely, Oliphant v. Bailey, 5 Q. B., 288), it would seem that there were no circumstances to show whose judgment was relied upon, other than a contract which called for "A two color printing machine on my patent principle." For all that appears in this case the buyer voluntarily selected the machine and relied upon his own judgment as to whether or not the machine made upon the patent principle would produce the result he desired.

Thus far we have proceeded upon the theory that the contract in question was for the purchase of a known, defined and ascertained article, purchased for the purpose of accomplishing a particular object which was made known to the seller. We have shown that even in such cases there is an implied warranty of fitness where from all the circumstance it must be inferred that the seller's judgment was relied upon. But we think the case at bar presents other and additional reasons for permitting parol evidence to show that in this case there was a machine sold to accomplish a particular purpose, and that the buyer did in fact rely on the seller's judgment. According to our construction of this contract it is not the purchase and sale of a known, defined and ascertained article, but merely a license from Curran & Wolff to Hauser & Kramer, permitting the latter to use one or more of the several patented principles for drying wood owned by Curran & Wolff. The contract does not sell to Hauser & Kramer a "Curran & Wolff dryer," as Judge Moore seems to have supposed in his opinion, nor does it in any way refer to any specific article. It is merely the right to use a patented process, no specific article being mentioned. The contract recites that Curran & Wolff are the owners of a number of letters patent issued for certain improvements in lumber dryers, and then proceeds to grant the plaintiff the right to construct and use one kiln or dry-house under the patents as aforesaid.

So far, therefore, as the contract goes, we might be justified in assuming that Curran & Wolff were to select from among the number of patents owned by them, the particular patent or patents which in their judgment would be best adapted to drying the lumber of Hauser & Kramer. We do not, therefore, think that the contract upon its face is complete, and therefore it is necessary to resort to parol evidence to ascertain the exact nature and purpose of the transaction. If the contract had granted the right to construct and use a kiln or dry-house specifically defined so that we might know from the contract itself that it called for a known article, then the position of defendants in error might have been stronger. But the contract fails to do this, and nowhere in the contract does it appear that the patented principle had ever been put in operation, that any kilns had ever been constructed upon said patented principles and pu upon the market. Defendant in error must

therefore resort to parol evidence to establish such facts.

Then does it not follow that if they must resort to parol evidence to show that it was in fact the sale of a known and defined article so as to exclude an implied warranty, that plaintiffs in error may also resort to parol to show that they were impliedly released from any obligation to rely on their own judgment in the selection of such article so as to re-establish an implied warranty of fitness? Upon the face of the contract there is no presumption of law that the buyer relied on his own judgment, and if parol evidence be admitted to make the contract complete so as to raise such presumption, then such presumption may be rebutted by parol evidence.

But, independently of this, we think the rule stated in the Seitz case that there is no implied warranty where a known article is ordered from a manufacturer, though intended for a particular use known to the seller, is contrary to the rule laid down by the Supreme Court of Ohio.

The rule in Ohio, as stated in the case of Rodgers v. Niles (11 Ohio St., 48), seems to be that where an article is ordered of a manufacturer and is intended for a particular purpose, which purpose may be shown by parol, the law implies a warranty that it will answer that purpose; and this, although the thing to be made is one of a specific kind, but is not *in esse* at the time.

The rule in this case seems to be laid down with special reference to cases of executory contracts for a delivery at a future day of an article not selected at the time, and the court quotes with approval the following language from Broom's Legal Maxims, (614):

"Where an agreement is for a specific chattel in its then state, there is no impied warranty of its fitness or merchantable quality; but if a person is employed to make a specific chattel, there the law implies a contract on his part that it shall be fit for the purpose for which it is ordinarily used."

On p. 53, the court, speaking of the doctrine that the buyer must look to himself, says:

"The principal, if not the sole exception to the rule, is found in cases where it is evident that the purchaser did not rely on his own judgment of the quality of the article purchased: The circumstances showing that no examination was possible on his part, or the contract being such as to show that the obligation and responsibility of ascertaining and judging of the quality was thrown upon the vendor, as where he agrees to furnish an article for a particular purpose or use."

On pp. 55-6, the court says:

"The contract sued upon was executory in its character. It was for the making and delivery to the plaintiff at a future day of three steam boilers to be used in running the engine of their rolling mill. It must

be clear that the rule of caveat emptor can apply in no such case whether the contract be made with a manufacturer or other person; for the purchaser can exercise no judgment in regard to the quality of a thing not *in esse*, or which is indeterminate and to be therefore selected or procured by the exercise of the vendor's sole judgment, discretion and will."

And further:

"This is perhaps not the case of an article agreed to be furnished for a special purpose. It does not appear that the plaintiffs required boilers of a peculiar quality and that this was known to the defendants. * * *. But the selection and procuring of the materials and the manufacture of the boilers the defendants took upon themselves and over their action in these matters the contract of the parties gave the plaintiffs no right of supervision and no power of control."

There can be no doubt that the contract in the present case is executory, and therefore the case of Rodgers v. Niles applies with especial emphasis; but the Niles case goes further and holds that even in an executed sale for specific articles there will be an implied warranty where the circumstances show that the responsibility of ascertaining and judging of the quality was thrown upon the vendor.

The case of Byers v. Chapin (28 Ohio St., 300,) seems to lay down the broad principle that a manufacturer of an article, independently of other considerations, impliedly warrants that the article will be suitable for the especial purpose for which it is sold.

This was a case where one party sold 5,000 oil barrels to a person whose business it was to properly glue the barrels before they could be fit for use. The purchaser rescinded the sale, claiming that after he had properly glued the barrels they were not suitable for the purposes for which they were purchased. Thereupon the seller accepted the rescission of the contract and gave his note to re pay the purchaser for the amount which the purchaser had paid upon the contract. Suit having been brought upon the note, it was alleged as a defense, that the barrels had not been properly glued and that the seller relied upon the buyer's representations in consenting to a rescission of the contract. It was held that he had a right to rely upon such representations of the buyer inasmuch as the buyer was held to impliedly warrant a fitness of his work, and it was held that such reliance constituted a good defense to the action upon the note.

Upon this branch of the case the court says, (306):

"Another view may be taken. These parties, plaintiff and defendant, were respectively warrantors. Defendant was a cooper who professed to sell oil barrels. He is under an implied warranty that his barrels were fit. (Rodgers v. Niles, 11 Ohio St., 48). The business of the plaintiff was to prepare and glue the barrels. He is under

an implied warranty that his work is also suitable. When, therefore, he complains to defendant, and claims to rescind the contract, he is understood as asserting that he has fulfilled his warranty in the matter of gluing and preparing, and that it has been properly done. If, therefore, this is not true, and the implied warranty has failed, this is sufficient reason for rescinding the contract based upon it.''

It will be noted, therefore, that in this case the court laid down the principle that there was an implied warranty by reason of the fact that the cooper was a manufacturer of oil barrels without evidence to show that the purchaesr did, under the circumstances, rely upon the judgment of the seller.

The case of Dayton v. Hoagland, (39 Ohio St., 671), was where a foreign manufacturer of a superior brand of iron, known as H. F. S. brand, entered into a contract by correspondence to sell the buyer twenty tons of such H. F. S. iron. It was claimed by the purchaser that the iron was not suitable for the purpose for which it was bought, namely. manufacturing the same into bolts and nuts for sale to the customers of the purchaser. There was no express warranty of fitness in any of the letters constituting the contract; nor does it appear anywhere that the buyer relied absolutely upon the judgment of the seller, but the following does appear from the statement of the case; (673).

''The fair inference for the testimony is, that Dayton, (the purchaser) knew from the beginning of the correspondence that Mitander was agent of the plaintiffs and clothed with authority to do whatever he undertook to do in the transaction; and that Mitander knew, and it must be assumed the plaintiffs knew, that Dayton was engaged in business in Cincinnati, and wanted the iron, not for the purpose of selling it in the form received, but for the purpose of manufacturing it into bolts and nuts for sale to his customers.''

And the court says on p. 682:

''Moreover, if there had not been such warranty that the quality should equal the Steever & Potts iron, the plaintiffs, knowing the object which the defendant had in view in obtaining iron from the manufacturers in Sweden, would have impliedly warranted that the iron furnished by them was suitable for the purpose for which it was obtained. and free from latent defects. Rodgers v. Niles, 11 Ohio St., 48; Byers v. Chapin, 28 Ohio St., 300; Randall v. Newsom, 2 Q. B. D., 102; Kellogg Bridge Co. v. Hamilton, 110 U. S., 108; Benjamin on Sales, sec. 988.''

We think this case is decisive of the case at bar, for here was a contract of the sale of a known, defined and ascertained article, namely, the H. F. S. brand of iron; and the court holds that when it appears by parol that the dealer knew the particular purpose which the buyer intended to make of the iron, that he thereby impliedly warranted its fitness for that purpose.

[COPYRIGHT, 1898, BY CARL G. JAHN.]

There are numerous authorities from other states in support of the position we take, but we only refer to the recent case of Omaha Coal, Coke & Lime Co. v. Fay, (55 N. W., 211,) which was a case where one party sold to another a certain kind or quality of lime to be used by the purchaser for the purpose of plastering a hotel. The purpose for which the lime was to be used by the purchaser was known to the seller. It was held that this created a warranty of fitness. The court saying, on p. 213:

''When one contracts to supply an article in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the vendor, there is an implied warranty that it shall be reasonably fit for the purpose to which it is applied; and the better doctrine is, that this rule applies to dealers as well as to manufacturers, and not to manufacturers alone, as the plaintiff in error contends.''

We are, therefore, of opinion that Curran & Wolff impliedly warranted to Hauser & Kramer that the kiln was reasonably fit for the purpose for which they knew it was intended. As there has been an entire failure of the machine to answer this purpose, we are of opinion that Curran & Wolff have not performed their contract, and that they are, therefore, not entitled to recover herein, but that, on the contrary, Hauser & Kramer are entitled to recover from Curran & Wolff the amount which they paid on said contract, and also such damages as they have sustained by reason of the non-fulfillment of said contract upon the part of Curran & Wolff.

This makes it unnecessary for us to consider the questions as to whether or not plaintiff is entitled to rescind the contract on the ground of fraudulent representations on the part of the agent of Curran & Wolff, and also whether they are entitled to reform the contract in equity.

We might add, however, that the case of Byers v. Chapin, (28 Ohio St., 300), seems to support the contention of plaintiff in error that they would, under the circumstances, have a right to rescind the contract inasmuch as the representations upon which they relied were not true in fact.

The judgment will therefore be reversed, and the cause remanded to special term for a new trial.

Hollister, J., concurring.

Hunt, J., dissenting.

Drausin Wulsin, Frank O. Suire, for plaintiffs in error.

Charles W. Baker, contra.